167 So.2d 16 (1964)
Max KORNBLUM, Appellant,
v.
HENRY E. MANGELS COMPANY, a Florida corporation, Appellee.
No. 63-892.
District Court of Appeal of Florida. Third District.
September 1, 1964.
Rehearing Denied September 21, 1964.
Myers, Heiman & Kaplan and Allen Kornblum, Miami, for appellant.
William W. Charles, Miami, for appellee.
Before BARKDULL, C.J., and TILLMAN PEARSON and HENDRY, JJ.
TILLMAN PEARSON, Judge.
We are asked to decide upon this appeal whether a lessee, who assigned his interest to a corporation, is liable under the covenants *17 of the lease after the assignee exercised an option, contained in the lease, for an additional term. The question arose in the following manner. Henry E. Mangels Company subleased to Max Kornblum certain real property, upon which was located a building containing a refrigeration plant. The lease was for a period of one year with options expressed as follows:
"* * * with an option to renew said lease for a further term of five (5) years, at the expiration of the one (1) year, and with a further option of five (5) years at the expiration of the first five (5) year option. * * *"
It was provided "that the sublessee [Kornblum] shall have the privilege of assigning the lease to the corporation to be formed at a later date." The lease was assigned by Kornblum to Everbest Meat Products Co. Everbest paid the rentals on the premises directly to Mangels and exercised both of the options quoted above. During the period covered by the second option, Everbest defaulted in the payment of rent and taxes and subsequently vacated the premises. At the time of vacating the premises, Everbest took with it certain machinery which it had installed.
The appellee, Mangels, filed its complaint at law in which it alleged that it was the landlord and the defendant Kornblum was a tenant of the property involved. It further alleged that both five-year options were exercised. As to the second option, it alleged that the notice of intention to exercise the option was addressed to the plaintiff by "Allen Kornblum, as agent and attorney for the defendant." It was then alleged that the defendant, Max Kornblum, had failed to pay certain rents and taxes and that certain personal property, which consisted of fittings and fixtures, had been removed from the premises.
After the denial of a motion to dismiss the complaint, an answer was filed in which the salient allegation was:
"3. For an affirmative defense, defendant would show the Court that after the execution of the sub-lease, he assigned his interest therein to a corporation, Everbest Meat Products Company, a Florida corporation, in which corporation he was interested. Said assignee was a separate and distinct entity in which the defendant was one of the stockholders; that it was Everbest Meat Products Company that exercised the right to a new lease granted thereunder, as more particularly appears from the exhibits attached to the plaintiff's complaint. The defendant, as alleged in paragraph IV of the complaint, lived up to the terms of the lease for the first year and for the first five-year option; that the option for the second five-year term was exercised by Everbest Meat Products Company, the assignee, by the written notice attached to the plaintiff's complaint; that by such written notice and the acceptance thereof by the plaintiff, a new contract was created between the plaintiff and Everbest Meat Products Company; that therefore the defendant has no liability or obligation whatsoever to the plaintiff."
The parties entered into a stipulation in lieu of proof and submitted the cause for determination by the trial judge without a jury. The stipulation was as follows:
"That the present cost of replacement of 2 York track doors is $460.72; 1 Jamison Lo Temp Door is $279.24; 284 ft. Meat rail system is $4,675.00; 100 ft. extra rails is $975.00, making a total of $6,389.96; that the Plaintiff was required to expend $95.00 to clean the premises after they were vacated in June, 1962; that the share of the 1961 taxes required to be paid by the tenant was $367.87; that the share of the 1962 taxes required to be paid by the tenant was $316.33, making a total of $684.20; that the rent was unpaid for the months beginning June, 1962 *18 through January, 1963, in the total sum of $2,600.00, less a credit of $325.00 security deposit, leaving a balance due of $2,275.00.
"That the sublease dated July 28, 1955 attached to the Complaint be received in evidence as Plaintiff's Exhibit No. 1.
"That the letter from Everbest Meat Products Co., a Florida corporation, to Henry E. Mangels Company, attached to the Complaint (undated) be admitted in evidence as Plaintiff's Exhibit No. 2, and Defendant stipulates that same was received prior to July 27, 1961.
"That the letter from Henry E. Mangels Company to Mr. Allen Kornblum, dated July 27, 1961, attached to the Complaint, be received in evidence as Plaintiff's Exhibit No. 3, and that said letter was received in due course by the addressee.
"That a group of photographs taken in the premises in November, 1962 will be received in evidence as Plaintiff's Exhibit No. 4, without objection.
"Commencing on or about November, 1955, and continuing each month thereafter until the premises were vacated in June, 1962, the monthly rental for the premises was paid by Everbest Meat Products Co., a Florida corporation, to Henry E. Mangels Company, a Florida corporation, by check drawn on the bank account of Everbest Meat Products Co., a Florida corporation.
"That the sublease was assigned by Max Kornblum to Everbest Meat Products Co., a Florida corporation, prior to July, 1956; that the first five (5) year option to renew contained in said sublease was exercised by Everbest Meat Products Co., a Florida corporation.
"That the 2 York track doors, 1 Jamison Lo Temp Door, 284 ft. Meat rail system and 100 ft. of extra rails were installed by Everbest Meat Products Co., a Florida corporation, during the years of 1955, 1956 and 1957."
The trial judge entered a judgment for the landlord Henry E. Mangels Company for all of the stipulated amounts including rent, taxes and personal property. The defendant, Kornblum, thereupon filed this appeal.
Appellant's position is that upon the assignment of the lease and the exercise of the options, a new contract came into being; therefore, the defendant Kornblum is not responsible to the plaintiff, appellee, on the lease. The second contention is that even if he is liable under the covenants of the lease, the trial judge should not have assessed against him damages for the removal of the personal property because a lessee is entitled to remove personal property which he has brought upon the premises during the term of the lease in the absence of a provision to the contrary in the lease.
The question of whether the lessee Kornblum is liable under the lease and the facts stipulated is divisible into two problems:
(a) Is a lessee liable upon the covenants of the lease when he has assigned the lease?;
(b) Is the lessee liable upon the covenants of the lease when he has assigned the lease and an option for an additional term has been exercised by his assignee?
The general rule is that a lessee may not escape liability upon express covenants in a lease by assigning the lease to another. See cases collected at 32 Am.Jur., Landlord and Tenant, § 358. We think this rule is particularly applicable in this case because the lease contemplated and provided for the assignment. It is obvious that the lessor was looking to his lessee for performance of the lease and simply gave permission for the assignment to a corporation to be designated by the original lessee. We therefore hold that under the facts before *19 us, the assignment did not affect appellant Kornblum's liability under the lease.
The next problem is the one presented by the exercise of the options. Since the period covered by the first option expired we need not concern ourselves with it. According to the allegations of the complaint, the second option was exercised by Kornblum through his attorney, as agent. The answer alleged that the assignee, Everbest Meat Products Company, exercised the option. The stipulation recognized that the letter exercising the option was from Everbest Meat Products Company. We, therefore, take it as proved that the option was exercised by the assignee. It is generally understood that the exercise of an option for an extended period under a lease is not a new lease but is an extension of the lease in which the option is contained. See Leibowitz v. Christo, Fla. 1954, 75 So.2d 692; Crossman v. Fontainebleau Hotel Corp., 273 F.2d 720 (5th Cir.1959). We do not think that the effect of this rule is avoided by the fact that the option was exercised by the assignee because the assignee was the owner of all of the rights of the lease contained in the lease. See: 20 Fla.Jur., Landlord and Tenant, § 63, fn. 10; 3 Fla.Jur., Assignments, § 27, fn. 20.
Inasmuch as neither the assignment nor the exercise of the options acted to annul or change the defendant's obligations under the lease agreement, we hold that the appellant Kornblum was liable under the terms of the lease and the trial judge correctly found such liability under the stipulation submitted to him.
Having reached the conclusion that Kornblum is liable under the lease, the next question is whether he is liable, under the facts presented to the trial judge, for the removal of the personal property listed in the stipulation. In answering this question we must return to the lease itself. This agreement provided that the premises were to be used as a refrigeration plant. It further provided that the lessee should maintain the plant in operating condition. Special provisions as to alterations were included as follows:
"* * * If Sub-Lessee desires to replace said plant, he may do so at his own expense, and at the expiration of this sub-lease, he has the right to remove such replacements, but he must put the present plant back in to the same condition it is in now, except for reasonable wear and tear.
"IT IS AGREED also that the Sub-Lessee shall have the right to make any alterations necessary, or incidental, to the business he will conduct on the premises, subject however, to provisions of paragraph 10, page 4 (post)."
Paragraph 10 of the lease, referred to above, provided for notice to the lessor of the contemplated alterations and repairs. Paragraph 11 of the lease contained a covenant of the lessee to maintain the premises in the same condition, order and repair as they were at the commencement of the term expecting only reasonable wear and tear arising from the use thereof and therefore to return them in that condition. The stipulation submitted to the court included the fact that the refrigerator doors and the meat-rail system were installed by Everbest Meat Products Company, the assignee. The stipulation also included certain photographs showing the condition of the premises after a removal of the equipment. It is apparent that the equipment was removed by the use of a blow torch and at considerable damage to the realty. Ordinarily alterations attached to the realty which cannot be removed without material or substantial injury become a part of the leasehold. See Ridgefield Investors, Inc. v. Holloway, Fla. 1954, 75 So.2d 208.
By the plain language of the lease agreement the lessee was entitled to remove personal property only if he left the premises in substantially the same condition in which they were received. The trial judge correctly found that the lessee was *20 liable for the damages incurred when the fixtures were not removed according to the license contained in the lease.
Having reached the conclusion that the judgment was without error upon the points presented, it is affirmed.
Affirmed.