561 So.2d 681 (1990)
Jeanette E. TAVORMINA, Appellant,
v.
William G. TIMMENY, Appellee.
No. 88-2524.
District Court of Appeal of Florida, Third District.
May 15, 1990.
Rehearing Denied June 25, 1990.
*682 Weitzner & Russo and Arthur Weitzner and Darrell V. Johnson, Miami, for appellant.
Olle, St. Louis, Macauley & Lee and Robert Macauley, Miami, for appellee.
Before NESBITT, FERGUSON and COPE, JJ.
PER CURIAM.
Jeanette Tavormina, Chapter 11 Bankruptcy Trustee for Tropical Botanicals Corporation, defendant below, appeals an adverse summary judgment in a suit on an employment agreement. At issue are the parties' rights and obligations after the employee became disabled during the employee's term of employment. We affirm in part and reverse in part.
In 1984 Tropical Botanicals hired plaintiff William F. Timmeny to serve as manager of Tropical's Costa Rican business and president of Tropical's wholly owned Costa Rican subsidiary. Effective June 1, 1986, the parties entered into a one-year employment agreement for Timmeny's services. The agreement provided, in part:
1.2 Term of Employment
... The Employer [Tropical] may terminate this Agreement on sixty (60) days written notice to the Employee [Timmeny], in which event the Employee will be entitled to be paid his normal compensation for the balance of the term of the Agreement or for twelve (12) monthly payments, whichever is longer.
Section 1.4 of the agreement provided that "Employer will pay all premiums due for disability income coverage in accordance with the coverage provided to Timmeny on Policy NO. LAN769584." Timmeny was the insured under the disability income policy.
The final provision pertinent here is the termination provision which provided, in part:
2.1 Extent of Services
... If the Employee refuses without reasonable cause to provide these services in accordance with the customs and practices established since November of 1984 said refusal will be deemed a material breach of this agreement and the Employer will be entitled, notwithstanding any clause contained in this contract to the contrary, to discharge the Employee upon written notice and payment of two-weeks' salary and that prorated *683 earned portion of the compensation payable... .
In February, 1987 Timmeny became seriously ill and was unable to continue his work. Tropical does not dispute the seriousness of the illness nor the inability of Timmeny to return to work. In May, 1987 Tropical terminated Timmeny and ceased paying him at that time. In June, 1987 Timmeny began receiving monthly disability benefits pursuant to the disability insurance policy referenced above.
Timmeny subsequently brought suit under the employment agreement, alleging that he was entitled to the contractual compensation and severance payments contemplated by section 1.2, quoted above. Timmeny moved for summary judgment, which was initially denied. Tropical later moved for summary judgment, which was also denied. The trial court then reconsidered its denial of Timmeny's motion for summary judgment and entered judgment for Timmeny. The trial court's order indicated that, in entering summary judgment for Timmeny, it had considered as extrinsic evidence several of the preliminary drafts of the Employment Agreement. Since the drafts had specifically mentioned "ill health," the court concluded that the possibility of ill health was within the contemplation of the parties at the time the Employment Agreement was entered into. The trial court reasoned that, since a termination for ill health was undoubtedly a termination without fault of the employee, the termination would be governed by the section 1.2 termination provision of the contract. Since the termination occurred less than 12 months prior to the expiration of the contract, the trial court concluded that Timmeny was entitled to 14 months of payments: the 60-day notice period of section 1.2, followed by the 12-month compensation period specified by section 1.2. The trial court rejected Tropical's contrary interpretation of the Employment Agreement, and rejected its alternative claims of entitlement to certain setoffs. Tropical has appealed.
We agree with the trial court that section 1.2 governs this controversy, although we reach that conclusion for reasons somewhat different than those announced by the trial court. In our view, the contract is clear on its face, and there was no reason to resort to extrinsic evidence. Section 1.4 of the Employment Agreement provided that Tropical would pay the premiums on Timmeny's disability insurance policy. Thus, when the Agreement was drafted, the possibility of disability was expressly within the contemplation of the parties. Nonetheless, the parties did not draft a special termination provision which dealt with termination on account of disability. Instead, the Agreement provided only two termination options: section 2.1, where the "Employee refuses without reasonable cause to provide [his] services," a provision which is inapplicable here, and section 1.2, which permits termination on 60 days' notice but requires, in exchange, what amounts to severance payments. We conclude that section 1.2 is applicable here.
Tropical contends that its obligations to Timmeny were discharged under the doctrine of frustration of purpose. See Bloom v. K & K Pipe & Supply Co., 390 So.2d 770 (Fla. 4th DCA 1980); Frankel v. Bernstein, 334 So.2d 37, 39 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 422 (Fla. 1977); Restatement (Second) of Contracts §§ 261-62 (1981). We disagree. The doctrine of frustration of purpose may come into play in the absence of a provision to the contrary in the contract. Bloom v. K & K Pipe & Supply Co., 390 So.2d at 773; Frankel v. Bernstein, 334 So.2d at 39. Here, however, disability was within the contemplation of the parties, as evidenced by the contractual provision for Tropical to pay Timmeny's disability insurance premiums. That being so, section 1.2 governs.[*]
*684 We do, however, find merit in Tropical's alternative points on appeal. First, we agree that the maximum benefit payable under section 1.2 was 12 months, not 14 months. We reach that conclusion because section 1.2 provides for 60 days' written notice, after which the employee "will be entitled to be paid his normal compensation for the balance of the term of the Agreement or for twelve (12) monthly payments, whichever is longer." (Emphasis added). Under the first alternative, where the compensation is to be paid for the balance of the term of the Agreement, the 60 day notice provision is included within, and not added onto, the remaining term of the Agreement. That being so, we conclude that where the alternative provision for "twelve (12) monthly payments" is applicable, the 60-day notice provision is likewise included within, and not added onto, the 12 month period.
Second, Tropical claims entitlement to a setoff for $3,162.14, representing an insurance premium reimbursement mistakenly paid to Timmeny which should have been paid to Tropical. Tropical should have been given credit for that amount.
Third, Tropical claims it is entitled to a setoff for the amounts of disability insurance payments made to Timmeny. Such setoffs are required by statute. See §§ 768.71, 768.76, Fla. Stat. (1987).
We therefore affirm the trial court ruling insofar as it determined that Timmeny is entitled to benefits under section 1.2 of the Agreement, but reverse the amount awarded, and remand with instructions to recompute the amount of the final judgment, giving Tropical credit for the setoffs just enumerated.
Affirmed in part, reversed in part, and remanded.
NOTES
[*] Because the contract is properly interpreted on its face, the claims of error in the trial court's consideration of extrinsic evidence, as well as the asserted procedural errors in the summary judgment, are moot. The trial court had the authority to reconsider its earlier interlocutory order denying Timmeny's motion for summary judgment. Bettez v. City of Miami, 510 So.2d 1242, 1243 (Fla. 3d DCA 1987); see Margulies v. Levy, 439 So.2d 336 (Fla. 3d DCA 1983).

Tropical is correct in saying that there was a procedural irregularity associated with the request for reconsideration. Timmeny's original motion for summary judgment argued that the contract was clear on its face. The request for reconsideration, however, was accompanied by the various drafts of the agreement and relied on those drafts as extrinsic evidence of the parties' intent. That was in reality a new legal theory, and Rule 1.510, Florida Rules of Civil Procedure, required that Tropical have the prescribed notice and opportunity to respond. The trial court order indicates that it based its decision on the additional drafts.
The error, however, is harmless. Since we have concluded that the contract is clear on its face, there is no reason to consider the late-filed drafts and no prejudice to Tropical from the belated filing.